---

# CHARLESTON.

## KEYSTONE COAL & COKE COMPANY v. J. R. HALL.

Submitted January 29, 1919.   Decided February 4, 1919.

1. WITNESSES—*Competency—Transaction with Deceased Officer of Corporation.*

   A party to a contract is competent to testify in his own behalf against a corporation in relation to a personal transaction between himself and a deceased officer of such corporation. (p. 288).

2. FORCIBLE ENTRY AND DETAINER—*Equitable Defenses.*

   The same equitable defenses are available to a defendant in unlawful entry and detainer as are available under the provisions of the statute in an action of ejectment.   (p. 289).

3. SAME—*Defenses—Verbal Contract of Lease.*

   In a suit for unlawful entry and detainer of real estate, a verbal contract of lease purporting to create a life tenancy cannot be set up by the defendant to defeat the action, even though

it is shown that the consideration has been fully paid, and the defendant put in possession thereunder. Such a contract is cognizable only in equity. (p. 289). .

Error to Circuit Court, McDowell County.

Action of unlawful entry and detainer by the Keystone Coal & Coke Company against J. R. Hall. From a verdict and judgment for plaintiff, on appeal to the circuit court, defendant brings error.

*Affirmed.*

*Strother, Taylor & Taylor,* for plaintiff in error.
*Anderson, Strother, Hughes & Curd,* for defendant in error.

RITZ, JUDGE:

The plaintiff instituted before a justice of the peace an action of unlawful entry and detainer to recover possession of the dwelling house occupied by the defendant and his family, situate on its property. The defendant, until a short time prior to the institution of the suit, was an employe of the plaintiff, and while such employe occupied one of the houses owned by it as part of its mining plant. Shortly before the institution of the suit the defendant was dismissed from plaintiff's services, and demand made upon him to vacate the house. This he refused to do, and this suit was instituted before a justice of the peace, resulting, on appeal to the circuit court, in a verdict and judgment in favor of the plaintiff.

The defense set up is that the defendant's wife holds the premises under a verbal contract with the plaintiff made in the year 1906, by which it agreed to permit her to occupy the dwelling house so long as she lived, in consideration of the settlement of a suit instituted by her to recover damages for the alleged wrongful death of her husband in the mines of the plaintiff. This defense was rejected by the court below upon the ground, as indicated by the record, that the defendant's wife was an incompetent witness to testify to the contract or agreement she had with the plaintiff company, because of the fact that the officer with whom

it was made is now dead.  It does not clearly appear that
this is the ground upon which the lower court based his rul-
ing, and this contention is not made by plaintiff's counsel in
this court.   Of course, the fact that the plaintiff's agent,
or officer, with whom the alleged contract was made is dead
would not, under the provisions of § 23 of ch. 130 of the
Code, make the defendant's wife an incompetent witness.
There is no inhibition against such testimony where the
transaction is had with a deceased agent.  *Board of Educa-
tion* v. *Harvey*, 70 W. Va. 480; *Hains* v. *Railway Co.*, 75 W.
Va. 613.

The plaintiff, however, does insist that the defense relied
upon cannot avail for the following reasons: First.   The
evidence of Mrs. Hall offered to show the contract does not
establish the same; Second. It does not appear that the agent
with whom the contract purported to have been made had
any authority to make the same; Third. The alleged contract,
not being in writing, is invalid under the Statute of Frauds.

The facts upon which the defendant relies to defeat re-
covery are substantially that in the year 1906 his wife was
then the wife of a man by the name of Meadows, who was
an employe of the plaintiff.   Meadows was killed while at
work in the mines of the plaintiff and, contending that his
death was caused by plaintiff's wrongful act, his adminis-
tratrix, who was his widow and the wife of the defendant in
this case, instituted a suit to recover damages.   While this
suit was pending the superintendent or manager of the plain-
tiff approached Meadows' widow and, after a conversation,
he agreed with her that she should have the right to occupy
the house in which she was then living, and in which Mead-
ows had been living before his death, as long as she liked;
that she should treat it as her own without any obligation to
the plaintiff company, in consideration that she dismiss the
suit for damages claimed because of the death of her hus-
band; that pursuant to this arrangement she did dismiss
the suit, and the plaintiff company never after that time
charged her any rent, or attempted to collect any rent for
this house until the year 1916, ten years thereafter; that
about two years after the death of her first husband she in-

termarried with the defendant in this case; that he, before his marriage, in a conversation with the superintendent of the plaintiff company, informed said superintendent that he and Mrs. Meadows were about to be married, and inquired if it would make any difference as to her rights in the house which she occupied, and was informed that it would not. From this the defendant contends that his wife is a life tenant in the property, and that the plaintiff cannot maintain this suit.

Before determining whether or not the testimony proves the contract relied upon by the defendant, or whether the agent making the contract had authority, or whether the Statute of Frauds bars it, or the nature of the right granted thereunder, assuming it was made, we must determine whether it is such a defense as can be made in this action, giving to it all the force for which the defendant contends. Defendant contends, of course, that the proof establishes the contract; that his wife paid all of the consideration for the tenancy, and that she was placed in possession of the premises and has been there ever since, and that notwithstanding it was not in writing, this full performance takes it without the Statute of Frauds. But can such a contract be set up in defense of an action for unlawful entry and detainer? There is no doubt that the defendant's wife would be entitled to relief in equity if the contract is properly interpreted by her, and the agent making the same had authority, or if without authority, his action was subsequently ratified, either by acquiesence, or by some affirmative act on the part of the company. But unless this is such a defense as can be made in this suit it would be manifestly improper for us to construe the evidence offered to support the contract, or to determine its legal effect in advance of these questions being raised in a court having jurisdiction to authoritatively determine them. In an action of ejectment, under §§ 20 and 21 of ch. 90 of the Code, certain equitable defenses are allowed to be made, that is, a defendant will be allowed to set up and rely upon a written contract of purchase, even though it has not been carried into deed, but these sections have been interpreted, not only by this court, but similar statutory provi-

sions have been construed by the courts of Virginia to ex-
clude the right of a defendant to set up a purely equitable
right not dependent upon a written contract, in defense of
an action of ejectment. *Garrett* v. *Oil Co.,* 66 W. Va. 587;
*Davis* v. *Teays,* 3 Gratt. 283; *Suttle* v. *Railroad Co.,* 76 Va.
284; *Hurley* v. *Charles,* 110 Va. 27. It is quite clear from
these authorities that in an action of ejectment such a con-
tract as is relied upon to defeat this action would not avail.
While the statute does not in express terms give to a de-
fendant the right to set up an executory contract for the
purchase of real estate as a defense in an action of unlawful
entry and detainer, it has been held that where he has such
a contract as would be a defense under the statute in an
action of ejectment, he could rely thereon in an action of
unlawful entry and detainer for the premises. *Dobson* v.
*Culpepper,* 23 Gratt. 352; *Williamson* v. *Paxton,* 18 Gratt.
475; *Locke* v. *Frasher,* 79 Va. 409; *Brumbaugh* v. *Sterringer,*
48 W. Va. 121. But in the case last above cited, it is dis-
tinctly held that, to be available as a defense in an action of
unlawful entry and detainer, such an executory contract
must be in writing; it must be such a contract as the law
recognizes, and not one which arises because of the applica-
tion of equitable principles to a status in which the parties
have placed themselves. The statute permitting this equit-
able defense goes no further than to permit a defense at law
under an executory contract in writing. Without the aid
of this statute it would take legal title to make a valid de-
fense, and the courts will not permit the defense relied upon
here to be effective unless it comes within the purview of the
statute permitting it. The conclusion is that the defense set
up and relied upon in this case is not available at law.
Whether or not it can be made effective in a suit in equity
will depend upon the interpretation of the contract, its ex-
tent, the authority of the agent making it, and the applica-
tion of the Statute of Frauds thereto. Having reached the
conclusion that this defense, however substantial, is not
available in this suit, and that the contract set up and relied
upon by the defendant is one cognizable only in a court of

equity, we conclude that the action of the circuit court in directing a verdict for the plaintiff must be affirmed.

*Affirmed.*